466 So.2d 811 (1985)
Mary HOLMES, Plaintiff-Appellee,
v.
STATE of Louisiana, Through DEPARTMENT OF HIGHWAYS, American Motors Corporation, American Motors Sales Corporation, Sentry Insurance Company and Gary L. Dickerson, Defendants-Appellants.
No. 84-174.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
Rehearing Denied April 16, 1985.
*814 Jerry Finley, Baton Rouge, for defendants-appellants.
Baggett, McCall & Ranier, William B. Baggett, Sr., Payton R. Covington, Lake Charles, for plaintiff-appellee.
Colvin J. Norwood, Jr., New Orleans, Kenneth I. Gluckman, Southfield, Mich., Raggio, Cappel, Chozen & Berniard, Fred L. Cappel, Lake Charles, for defendants-appellees.
Before GUIDRY, FORET and STOKER, JJ.
GUIDRY, Judge.
This case is one of three tort actions based upon common facts which were consolidated for trial. The cases remain consolidated on appeal, and we this day render separate decisions in the companion cases entitled Dickerson v. State of Louisiana, Through the Department of Highways, et al., 466 So.2d 830 (La.App. 3rd Cir.1985), and Olivier v. State of Louisiana, *815 Through The Department of Highways, et al., 466 So.2d 831 (La.App. 3rd Cir.1985).
These cases arise out of a single vehicle accident which occurred on Interstate 10 in Calcasieu Parish. The driver of the vehicle was Gary Dickerson; the passengers were Julie Olivier, Wanda Moore and Steve Duhon. Miss Moore died as a result of injuries sustained in this mishap; Miss Olivier sustained serious injuries.
Mary Holmes, as surviving parent of Wanda Moore, filed a tort action against the State of Louisiana, through the Department of Highways (DOTD), American Motors Corporation (AMC), Sentry Insurance Company (Sentry), and Gary E. Dickerson. Mrs. Holmes alleged the negligence of DOTD, AMC and Dickerson caused the injury and resulting death of her daughter, Wanda Moore. Mrs. Holmes also sought recovery from Sentry on the basis of an insurance policy issued by Sentry in favor of Miss Moore providing uninsured motorist coverage.
Julie Olivier filed suit against DOTD, AMC, Aetna Casualty & Surety Company (Aetna), and Gary Dickerson. Miss Olivier alleged the negligence of DOTD, AMC and Dickerson caused her injuries. Miss Olivier sought recovery from her insurance carrier, Aetna, under the uninsured motorist provisions of the policy.
Gary Dickerson filed suit against DOTD and AMC alleging their negligence caused his injuries.
DOTD, in answering the above suits, denied liability and further pled the affirmative defenses of assumption of risk and contributory negligence on the part of Dickerson, Olivier and Moore. Also DOTD filed third party demands against AMC in all three suits. DOTD third partied Dickerson and Olivier in the Holmes' suit. DOTD third partied Dickerson and the Estate of Wanda Moore in the Olivier suit.
AMC, in its answer to the three suits, denied liability and pled the affirmative defenses of assumption of the risk and contributory negligence on the part of Dickerson, Olivier and Moore. In addition, AMC filed third party demands against DOTD in all three suits. AMC also third partied Dickerson in the suits filed by Olivier and Holmes.
Prior to trial, a number of dismissals took place. Mrs. Holmes dismissed her claim against Sentry, Dickerson and AMC. She dismissed Dickerson and AMC as of non-suit. The dismissal of AMC carried with it the additional covenant not to sue AMC. The dismissals contained the proviso that all rights were reserved against any other parties which may be liable. Miss Oliver dismissed her claims against Aetna, Dickerson and AMC. The conditions of her dismissals were the same as Mrs. Holmes. Gary Dickerson dismissed his claim against AMC under the same conditions as well. Subsequently, AMC dismissed its third party demands against Dickerson in the Olivier and Holmes cases.
Exceptions of no cause of action were filed by Olivier and Holmes in connection with DOTD's third party demands against them. The trial court maintained the exceptions.
After trial on the merits, the trial court found that DOTD was solely responsible and awarded judgment against DOTD in the amounts of $1,100,000.00 to Julie Olivier, $110,000.00 to Mary Holmes, and $37,500.00 to Gary Dickerson. All other respective claims were dismissed. DOTD has suspensively appealed these judgments.

FACTS
On October 12, 1980, at approximately 8:15 p.m., a vehicular accident occurred on Interstate 10 near Westlake, Louisiana, in Calcasieu Parish. The accident occurred on the eastbound side of the divided highway. The driver of the 1980 AMC C-J-5 Jeep involved in the accident was Gary Dickerson. Dickerson's passengers were Julie Olivier, Wanda Moore and Steve Duhon. As Dickerson proceeded to pass slower vehicles by entering the inside or northernmost lane of travel of the eastbound highway, he allowed the left wheels of the vehicle to stray onto the shoulder. The vehicle continued to deviate from its lane of *816 travel to the point where the left wheels of the vehicle were entirely off of the shoulder and on the grassy median. At the point where the Jeep deviated onto the shoulder, the shoulder was paved with asphalt and was in good condition; it measured 44 inches in width. The Jeep continued down this path for approximately 160 feet before it encountered a complete lack of asphalt shoulder. At this point, all four wheels of the Jeep were completely off the traveled portion of the roadway. The right wheels of the Jeep scrubbed against the edge of the pavement of the roadway. Dickerson attempted to re-enter the highway as his vehicle encountered this rut. Since the dropoff was approximately five inches in this area, Dickerson applied a great deal of force in his steer. As Dickerson attempted to regain the highway, his right front wheel encountered an area of shoulder in which the asphalt remained. The vehicle re-entered the highway upon encountering this elevated shoulder. However, because Dickerson had placed so much force into his steer, the vehicle was, in a sense, propelled onto the highway. Upon re-entering the highway in this sudden manner, the vehicle began to flip over as it crossed the highway.
At trial, it was established that two missing segments of asphalt shoulder existed in this area. The first missing segment or rut was approximately 45 feet in length; the second missing segment was 30 feet in length. Between these two ruts there existed a section of asphalt shoulder 15 feet in length. The area of asphalt between these two ruts was referred to at trial as an island of asphalt. The two ruts were approximately five inches in depth.
The evidence adduced at trial also established that these four individuals were returning home from an excursion to Holly Beach, Louisiana. The four had spent a large part of the day together riding around on the beach in Dickerson's Jeep. During the outing, the four consumed some beer and smoked marijuana. Although the testimony was somewhat inconsistent on this matter, Dickerson testified that three marijuana cigarettes were smoked while Olivier and Duhon maintained that only two marijuana cigarettes were smoked. The same holds true for the amount of beer consumed. Dickerson testified that he drank six, ten-ounce beers during the outing while Duhon and Olivier testified that only seven-ounce beers were drunk. Be that as it may, Dickerson's blood alcohol level at 10:05 p.m. the night of the accident was .073%.

LIABILITY OF DOTD
The trial court concluded in this case that the preponderance of the evidence proved the existence of a defective shoulder and that it was the proximate cause of the accident. Furthermore, the trial court found that DOTD knew or should have known of the defect. The determinations of the trial court in this regard are factual and should not be reversed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La. 1973).
On appeal, DOTD does not seriously question the existence of the defective shoulder, but rather argues that the trial court clearly erred in finding that DOTD knew or should have known of the defect prior to the accident. DOTD contends that the trial court arrived at this finding based upon aerial photographs which were erroneously admitted into evidence.
To recover on the basis of negligence, it was incumbent upon plaintiffs that they prove that DOTD knew or should have known of the defect prior to the accident. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). In order to prove this element of their case on the theory of negligence, plaintiffs introduced aerial photographs taken on March 1, 1979 and October 3, 1980, depicting the area in which the accident occurred. By the use of expert testimony, plaintiffs were able to establish that the defective condition of the shoulder was in existence as far back as March 1, 1979. The trial court, in its written reasons for judgment, accepted the testimony relating *817 to the March 1, 1979 photograph as proof that the defect existed at that time and continued to exist right up to the time of the accident. The trial court found no proof that DOTD had made any repairs to the shoulder during this interval. Counsel for DOTD objected to the introduction of these photographs at trial.
We have examined the arguments propounded by DOTD on appeal in support of its contention that the aerial photographs were inadmissible. Although we believe that the trial court was correct in allowing the aerial photographs to be admitted into evidence, we deem it unnecessary to delve any further into this matter because the trial court could have also found DOTD liable on the basis of strict liability. Under the theory of strict liability, a claimant is relieved of the burden of proving that the defendant knew or should have known of the risk, i.e., the defect. Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982). Since plaintiffs were relieved of proving the element of scienter under strict liability, even if we were to assume that the trial court erred in finding that plaintiffs had proved knowledge on the part of DOTD, plaintiffs would not be precluded from recovery on the basis of strict liability. Therefore, we will simply address DOTD's liability on the basis of strict liability without any further discussion as to the admissibility of the aerial photographs.
One may recover on the basis of strict liability under La.C.C. Art. 2317 by showing (1) that the thing which caused the damage was in the care or custody of defendant; (2) that it had a vice or defect, i.e., some condition which occasioned an unreasonable risk of injury; and, (3) that the injury was caused by the defect. Jones v. City of Baton Rouge, 388 So.2d 737 (La. 1980); Efferson v. Louisiana Department of Transportation and Development, 463 So.2d 1342 (La.App. 1st Cir.1984).
Evidence adduced at trial established that a patently dangerous condition existed on the shoulder of Interstate 10 at the point and time of the accident. It was established that two segments of the asphalt shoulder were completely missing from the area in question. The elevational difference between the paved surface and the shoulder was approximately five inches in these two ruts. Clearly, this condition created an unreasonable risk of harm to straying motorists.
DOTD is under a duty to maintain the highways and shoulders in a reasonably safe condition. Sinitiere v. Lavergne, supra; Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition. Sinitiere v. Lavergne, supra. This duty imposed on DOTD is the same under either strict liability or negligence. See Kent v. Gulf States Utilities Co., supra; Efferson v. Louisiana, Department of Transportation and Development, supra.
There is no doubt that the dropoff in this case was a substantial factor in causing the Jeep to flip over as Dickerson attempted to re-enter the highway. DOTD's breach of its duty to maintain the shoulder in a reasonably safe manner encompassed the risk of the kind of accident and injury involved here, and it is strictly liable under La.C.C. Art. 2317 for the injuries caused by the defective shoulder. See Thomas v. Jackson, 442 So.2d 1186 (La. App. 2d Cir.1983), writ denied, 445 So.2d 435 (La.1984).

LIABILITY OF GARY DICKERSON
The trial court, in its written reasons for judgments, made the following comments regarding the conduct of the driver, Gary Dickerson:
"The great preponderance of the evidence in this case will be that no matter what the reason for Gary Dickerson leaving the paved portion of the highway whether it be through driver inadvertence, or the dip in the road, his actions were normal and from the minute he *818 attempted re-entry to the highway and encountered a scrubbing of the tires, his vehicle was doomed to go out of control and overturn. But for the shoulder defect, the jeep would not have gone out of control and the overturn would not have occurred. If this man had been a completely sober driver, it would have still been impossible for him to have avoided the accident which occurred. This Court finds that intoxication was not a contributing cause to the accident."
The trial court also found that the evidence presented at trial did not establish that Dickerson's driving ability was impaired at the time of the accident.
After carefully reviewing the record, we find that the trial court clearly erred in failing to find Dickerson's actions negligent and a cause in fact of the accident.
Concerning the question of Dickerson's impairment, we find overwhelming evidence in the record supporting the conclusion that Dickerson's driving ability was impaired at the time of the accident.
Dickerson's own testimony relating to this issue can be summarized as follows: He drank six, ten ounce, beers over a period of seven hours; he smoked, along with the other passengers, three marijuana cigarettes during this same time span; and, he took two prescribed pain killer pills in the morning before leaving for Holly Beach. The pills were taken simultaneously although the directions for the medication instructed the user to take only one pill every four hours.
At 10:05 p.m. the night of the accident, a blood sample was drawn from Dickerson. A gas chromograph test was conducted on this blood sample in order to determine Dickerson's blood alcohol content. The test results indicated a blood alcohol level of .073% at 10:05 p.m., which was approximately an hour and fifty minutes after the accident.
In Parker v. Kroger's Inc., 394 So.2d 1178 (La.1981), the Louisiana Supreme Court stated:
"La.R.S. 32:662 creates a presumption that a person was under the influence of alcoholic beverages if at that time 0.10 percent or more by weight of alcohol was in his blood. Although this presumption is inapplicable in civil actions, it in no way prevents a civil litigant from introducing into evidence a person's blood alcohol content and testimony of competent expert witnesses to interpret the effects of such a level on a person's ability to operate a motor vehicle. Champagne v. McDonald, 355 So2d 1335 (La.App. 3d Cir.1978); Brown v. Collins, 223 So2d 453 (La.App. 3d Cir.1969)."
Dr. James Freeman, an expert in forensic pathology, testified that Dickerson's blood alcohol level at the time of the accident (8:15) was .102%. Dr. Freeman arrived at this figure by taking the alcohol percentage known to have been in Dickerson's blood at 10:05 p.m. and correlated this figure with the normal rate of alcohol metabolized by a man of Dickerson's weight in an hour and fifty minutes.
Dr. Freeman opined that an individual with a blood alcohol level of .102% will have decreasing coordination, impairment of the reflexes along with alteration in judgment. Dr. Freeman concluded that Dickerson's driving ability was impaired at that level of blood alcohol. Moreover, Dr. Freeman noted that the use of marijuana magnified the effect of the alcohol.[1]
As aforestated, the trial court found that Dickerson's driving ability was not impaired at the time of the accident. We conclude that this factual determination of the trial court is manifestly wrong. The evidence adduced at trial clearly establishes that Dickerson's driving ability was impaired at the time of the accident due to his consumption of alcohol and marijuana.
The next necessary determination concerns whether or not Dickerson's impairment *819 played a causal role in bringing about the accident. We agree with the trial court that, once Dickerson's Jeep encountered the shoulder defect, his vehicle was doomed to overturn. However, unlike the trial court, we believe that the inquiry must also focus on what caused Dickerson's vehicle to be placed in this predicament.
Approximately 160 feet west of the first shoulder rut, the Dickerson vehicle strayed off of the highway. While the right wheels remained on the traveled portion of the highway, the left wheels strayed entirely across the asphalt shoulder onto the median. The asphalt shoulder, which was in good condition in this particular area, measured 44 inches in width. The wheel tract of the Jeep measures approximately 52 inches. Thus, nearly three quarters of the Jeep was completely off the traveled portion of the highway at that point.
Expert testimony adduced at trial established that the Jeep was traveling 55 miles per hour at the time it left the roadway. Dickerson's testimony corroborated this finding. According to the experts, a vehicle will travel 81 feet per second at 55 miles per hour. Therefore, from the location where the Jeep began its trek down the median to the beginning of the shoulder rut (160 feet), the distance would be covered in approximately two seconds. According to expert testimony, an unprepared driver can react to a condition in one and a half seconds.
Although Dickerson stated that he was able to slow down his vehicle once it left the highway, the expert testimony suggests that the Jeep encountered the rut at a speed of 55 miles per hour. Furthermore, Dr. Tonn, an expert in accident reconstruction called by plaintiffs, testified that a motorist could have significantly reduced the vehicle's speed while traveling this span of some 160 feet, yet the evidence fails to establish that Dickerson reduced the speed of his vehicle after leaving the highway.
It is also noteworthy that Dickerson testified that he was aware of the particular handling characteristics of the Jeep, i.e., its high center of gravity which makes it more prone to roll over.
We believe that a prudent motorist would not have allowed his vehicle to stray off the highway to such a degree as Dickerson did in this case, and a prudent driver, particularly one operating a vehicle which is quite susceptible to turning over, would have sufficiently reduced the speed of the vehicle in order to allow a safe re-entry. We believe that Dickerson's imprudence as a motorist was caused by his intoxication. Hence, we find that Dickerson's impaired driving ability was a substantial contributing cause of this accident.
Before we are able to assess liability on the part of Dickerson however, we must examine his conduct in light of our Supreme Court's pronouncement in Rue and its progeny.
In Rue v. State, Dept. of Highways, supra, the driver inadvertently allowed the right tires of her vehicle to leave the paved surface of the highway. As the driver attempted to regain the paved portion of the highway, her right front wheel struck a deep rut adjacent to a ragged, eroded edge of the highway causing the vehicle to overturn. Our Supreme Court stated:
"Under a simple `but-for' analysis the accident would not have occurred had either the Highway Department not been negligent in failing to maintain the shoulder or the plaintiff not been negligent (and for present purposes we assume her inadvertent meandering was negligence) in moving the vehicle onto the shoulder. But this does not conclude the inquiry. Focusing on plaintiff's `substandard' conduct the question is whether the risk of injury from striking an unexpected, negligently maintained highway shoulder was a risk reasonably related to plaintiff's failure to drive entirely on the paved portion of the highway. We conclude that it was not. A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely *820 the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself travelling on, or partially on, the shoulder.
We conclude that plaintiff's conduct if indeed it was substandard is no bar to her recovery of damages occasioned chiefly because the Highway Department negligently failed to maintain a safe highway shoulder...."
In the subsequent case of Sinitiere v. Lavergne, supra, the Court made the following comments concerning the Rue case:
"In Rue, supra, this Court stated that a motorist's duty to drive reasonably does not extend to the risk of injury from striking an unexpected and unexpectable hazard resulting from a negligently maintained highway shoulder. The reason for this statement was the jurisprudentially recognized rule that a motorist has a right to assume that highway shoulders are maintained in a reasonably safe manner in the absence of knowledge or reason to know of a defect. This language does not establish the highway shoulder as a `zone of recovery' for every straying motorist. Rather, it states the simple principle that the law will not automatically bar a person from recovery or charge him with liability vis-a-vis third parties where the law does not charge that person with actual or constructive knowledge of an avoidable danger. Thus, if a person is chargeable with knowledge of a shoulder defect that could cause serious injury and, nevertheless, disregards his own safety and the safety of others, the law considers his actions in leaving the main travel portion of the roadway to be a breach of his duty to himself and to the others who can reasonably be expected to be injured by his actions. See Rodgers v. Department of Highways, 376 So.2d 1295 (La.App. 2d Cir.1979); Morrow v. Department of Highways, 377 So.2d 430 (La.App. 2d Cir. 1979)."
The motorist was denied recovery in the Sinitiere case. The facts of that case were summarized in the recent decision of Thomas v. Jackson, supra, as follows:
"... The driver in the Sinitiere case inadvertently allowed his right two wheels to ease onto the shoulder. There was only a slight depression, if any, on the shoulder at the point where the wheels left the paved portion of the highway, but the depression deepened over a 100 foot span to the point where the driver attempted to reenter the highway. The driver allowed his vehicle to slow to about 35-40 miles per hour and then attempted to reenter the highway at a point where there was a 3½ to 4-inch drop-off from the paved portion of the highway to the shoulder. Contact between the wheel and the elevated edge of the roadway caused the driver to lose control of his vehicle, careen across the highway, and collide with an oncoming vehicle. The court held that the driver was not negligent in going onto the shoulder but he should have known something was seriously wrong at the point where he attempted to reenter the paved portion of the highway. He was not justified in failing to see the significant depression at that point and his breach of duty to observe what he should have seen was a cause-in-fact of the accident and had a substantial relation to the harm encountered by himself and the occupants of the vehicle with which he collided. The court held the driver was liable to the other parties and was precluded from recovering from the Department, which was also found liable to the other parties because of the defective shoulder...."
Although the trial court made no mention of any jurisprudence in support of its position that Dickerson was not negligent in this case, we assume the court was guided by Rue and Sinitiere.
While we are cognizant of our Supreme Court's reasoning behind ignoring the substandard conduct of a motorist who inadvertently strays onto the shoulder, we do *821 not believe that the conduct of the motorist in this case can be dismissed entirely.[2]
It is well settled that a motorist has a duty to keep his vehicle under control. Russo v. Guillory, 322 So.2d 233 (La.App. 4th Cir.1975), writ denied, 325 So.2d 608 (La.1976). Dickerson's vehicle did not merely stray onto the shoulder in this case; it was almost a complete deviation from his lane of travel. In fact, at the point where the Jeep first encountered the rut, the entire vehicle was off of the traveled portion of the roadway and had traveled a distance of 160 feet. Dickerson allowed his vehicle to go beyond a 44 inch "zone of recovery." In our view, this conduct amounts to more than mere inadvertence and should not be ignored in apportioning fault. Furthermore, in our view, the record reflects that Dickerson's consumption of alcohol and marijuana affected his ability to properly maintain control of his vehicle. It is clear to us that Dickerson's failure to safely operate his vehicle was caused in great measure by his intoxication and that his inability to properly control his vehicle was a cause-in-fact of this accident.
In sum, we conclude that the Highway Department's duty to maintain a safe shoulder does not encompass the foreseeable risk of injury to a motorist who strays completely off the travel portion of the highway because his driving ability is impaired by reason of intoxication, particularly when the principles announced in Rue, supra, are considered in light of the later legislative enactment of our comparative negligence law. In Sinitiere v. Lavergne, supra, our Supreme Court was careful to point out that, although a motorist has a right to assume that highway shoulders are maintained in a reasonably safe manner, this concept does not "... establish the highway shoulders as a `zone of recovery' for every straying motorist."
For these reasons, we conclude that the trial court clearly erred when it failed to find Dickerson's actions negligent and a substantial cause in fact of the accident.

WERE JULIE OLIVIER AND WANDA MOORE GUILTY OF CONTRIBUTORY NEGLIGENCE AND/OR DID THEY ASSUME THE RISK
DOTD contends that the trial court erred in failing to find Julie Olivier and Wanda Moore guilty of contributory negligence and/or that they assumed the risk of injury. Specifically, DOTD argues that Olivier and Moore knew or should have known of Dickerson's intoxication and thus assumed the risk of injury by riding with him.
The law is well settled that a guest passenger riding with a driver who has been drinking excessively assumes the risk of injuries received in an accident caused in whole or in part by the driver's negligence, if the alcohol-induced impairment of the driver's ability is a substantial contributory cause of the driver's negligence and if the guest passenger knows or should have known of the driver's condition and nevertheless voluntarily rides with him. Prestenbach v. Sentry Insurance Co., 340 So.2d 1331 (La.1976); Marcotte v. Travelers Insurance Co., 258 La. 989, 249 So.2d 105 (1971); Jones v. Continental Casualty Co., 246 La. 921, 169 So.2d 50 (1964).
A defendant who pleads contributory negligence or assumption of the risk bears the burden of proving it. La.C.C.P. Art. 1005. Therefore, in the instant case, it was incumbent upon DOTD that they prove by a preponderance of the evidence that: 1) the driver was intoxicated; 2) his intoxication was a cause of the accident; and, 3) the guest passengers knew or should have known of the driver's condition. Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than *822 not. Prestenbach v. Sentry Insurance Co., supra.
Although, for reasons discussed earlier, we find that DOTD proved Dickerson was intoxicated and his intoxication contributed to the accident, DOTD did not establish that Julie Olivier and Wanda Moore knew or should have known of Dickerson's condition.
Both Steve Duhon and Julie Olivier testified that Dickerson did not exhibit any overt signs of intoxication to them. Their testimony was consistent with the expert testimony on this subject. Dr. Freeman stated that, given the blood alcohol content in Dickerson's body at the time of the accident, it was quite possible that an observer could not have detected his intoxication. Dickerson could have masked the condition. Although Olivier and Moore were with Dickerson practically all day and participated in the intake of alcohol and marijuana with him, the record fails to establish by a preponderance of the evidence that Olivier and Moore knew or should have known of Dickerson's intoxication. Accordingly, the trial court's findings in this connection will not be disturbed.

LIABILITY OF AMC
The trial court granted AMC's motion for a directed verdict on DOTD's third party demand against it. In its brief on appeal, DOTD sets forth a number of errors it argues were committed by the trial court, which ultimately led to the granting of the directed verdict.
Initially, DOTD cites Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979) as authority for its position that when a motion for a directed verdict is made, the court must view and interpret the facts in the light most favorable to the plaintiff. In the present case, the trial court applied the preponderance of evidence rule. DOTD claims the trial court erred in applying the preponderance of the evidence rule instead of the Campbell standard.
In Semien v. PPG Industries, Inc., 413 So.2d 956 (La.App. 3rd Cir.1982), this court noted that in cases tried before a judge alone, as in the present case, the rule of Campbell is inappropriate. The proper standard, as enunciated in Semien, is for the trial judge to weigh and evaluate all the evidence and render a decision based upon a preponderance of the evidence. In light of Semien, the trial court applied the correct standard.
DOTD argues that the trial court resolved a number of evidentiary issues erroneously. In particular, DOTD contends that the trial court curtailed their ability to examine Mr. Paul O'Shea (DOTD's expert) regarding the rollover characteristics of the Jeep vis-a-vis a Chevrolet Caprice.
The particular question which DOTD sought to ask Mr. O'Shea was as follows:
"In your opinion, would a Chevrolet Caprice turn over at thewith the steering input that you're of the opinion that was placed into the vehicle at the area where the drop-off existed withat that location with that drop-off and the same amount of steering that was required that was placed into this Jeep, if that same amount of steering were placed into the Chevrolet Caprice, would it roll over?"
Counsel for AMC objected to the question and the trial court maintained the objection. The trial court admonished counsel for DOTD to be more specific in his questioning of Mr. O'Shea on this subject. Counsel for DOTD simply chose to forego anymore questions of Mr. O'Shea along these lines. DOTD did not make an offer of proof of this evidence. La.C.C.P. Art. 1636.
It is quite evident that the trial court did not set out to curtail DOTD's presentation of evidence, but merely sought to have counsel be more specific in his questioning. We find no error in the trial court's ruling on this issue. Furthermore, we have carefully reviewed the record and find no error in the lower court's rulings on numerous other evidentiary issues complained of by DOTD in conjunction with the directed verdict.
*823 DOTD asserts that the limited evidence the trial court permitted it to introduce established that AMC failed to give proper warnings of the Jeep's instability, and that the Jeep had a negligently designed roof and doors. Cited as an underlying authority in support of this argument on behalf of DOTD is the case of Brandenburger v. Toyota Motor Sales, U.S.A., Inc., 513 P.2d 268 (Mont.1973).
In the instant case, the trial court found that the design or manufacture of the C-J-5 Jeep was not a contributing cause of the accident. The Brandenburger decision would carry causation a step further. According to Brandenburger, an automobile manufacturer's duty is not eliminated simply because the defect complained of did not cause the accident. The Montana Supreme Court, quoting Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir.1968), found:
"... No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called `second collision' with the interior part of the automobile, all are foreseeable. Where the injuries or enhanced injuries are due to the manufacture's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable."
DOTD attempts to extrapolate the above quoted language in Brandenburger to convince this court that the trial court erred in granting AMC's motion for a directed verdict. Regardless of the soundness of the Brandenburger decision, DOTD made no showing in the instant case that the roof and doors of the Jeep were defective. Although evidence was adduced at trial that the top of the Jeep came off as the Jeep overturned, DOTD failed to establish or, for that matter, attempt to establish that this rendered the Jeep defective or that such circumstance caused an exacerbation of the occupants' injuries. DOTD failed to establish by a preponderance of the evidence that the Jeep was in any manner defective.
Additionally, DOTD's argument that AMC failed to warn Dickerson of the instability of the Jeep is without merit.
A manufacturer has a duty to give adequate warning of unreasonable danger involved in the normal use of its product where it knows or should have known of that danger. A product sold without such a warning is defective. Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978). However, there is no duty to warn the buyer of dangers which he either knows or should know. Potmesil v. E.I. Dupont deNemours Co., Inc., 408 So.2d 315 (La.App. 3rd Cir.1981).
Dickerson testified that he was fully aware of the unique handling characteristics inherent in a Jeep, including its high center of gravity which tends to make the Jeep more unstable. Dickerson was fully aware of the possible danger inherent in the Jeep. Hence, AMC was under no duty to warn Dickerson of this danger.
In light of the above, we do not find that the trial court erred in granting AMC's motion for a directed verdict.

APPORTIONMENT OF FAULT
After considering the conduct of the respective parties, we have concluded that DOTD and Dickerson were concurrently at fault in this case. We find DOTD strictly liable and Dickerson contributorily negligent. Since we have found DOTD strictly liable under Article 2317 of the Civil Code, it must be determined whether the defense of contributory negligence and/or comparative negligence is available in such a case.
In the recent decision of Efferson v. Louisiana Department of Transportation & Development, supra, the First Circuit determined that contributory negligence was an available defense in a strict liability case involving DOTD. In Efferson, DOTD was found liable under Article 2317 while the motorist was found to be contributorily negligent. The Efferson court applied the *824 comparative negligence rule enunciated in C.C. Art. 2323[3] and reduced the injured motorist's award by the percentage of fault accorded to him. In reaching its decision on the availability of contributory negligence as a defense in a 2317 case, the Efferson court was guided by the plurality opinion of our Supreme Court in Dorry v. Lafleur, 399 So.2d 559 (La.1981).
According to Efferson, the Dorry court "... found that where the activity for which the defendant was strictly liable was neither ultrahazardous nor unnatural to the locality, and produced no income to the defendant, that there was no policy reason to deny the defendant the defense of contributory negligence." The Efferson court concluded that there were no policy reasons for denying DOTD the defense of contributory negligence.
It should be noted that subsequent to the Efferson decision, our Supreme Court, in the case of Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), docket No. 83-CQ-2158, published January 14, 1985, was called upon to decide whether contributory negligence or comparative fault was applicable in a strict products liability case. The court found:
"... we conclude that the defense of contributory negligence as a complete bar to recovery should be rejected entirely, and that comparative fault may be applied in certain catagories of cases to reduce the plaintiff's recovery."
The court in Bell set forth the following factors to be weighed in considering the applicability of comparative fault:
"... [w]here the threat of a reduction in recovery will provide consumers with an incentive to use a product carefully, without exacting an inordinate sacrifice of other interests, comparative principles should be applied for the sake of accident prevention. The recovery of a plaintiff who has been injured by a defective product should not be reduced, however, in those type of cases in which it does not serve realistically to promote careful product use or where it drastically reduces the manufacturer's incentive to make a safer product."
Although it is obvious that the instant case is not, strictly speaking, a "product liability" case, we believe that it is helpful to look to the policy considerations announced in Bell, by way of analogy, to determine the availability of the defense of comparative negligence in this case.
Would reducing Dickerson's award act as an incentive for motorists to operate their vehicles more safely on the highways? We think that it would. Will the reduction of Dickerson's award lessen the incentive of DOTD to maintain reasonably safe highways and shoulders? We think not.
Under the Rue decision, the duty of DOTD to maintain reasonably safe highways and shoulders extends to the protection of a motorist who, through simple inadvertence, finds himself on the shoulder. The expansive scope of DOTD's duty under Rue undoubtedly acts as an incentive to DOTD to maintain the highways and shoulders properly.
Because we find Dickerson's conduct in this case, as a motorist, amounts to more than "simple inadvertence", we do not believe that his conduct should be ignored. Reducing his award by the degree of fault attributable to him will, in our view, serve as an incentive to other motorists for safe highway travel. Accordingly, we believe that this is an appropriate case for application of the rule of comparative fault, i.e., comparative negligence within the purview of C.C. Art. 2323.
Inasmuch as we have determined that the trial court was clearly wrong in failing to find Dickerson at fault, we must *825 decide the percentage of fault attributable to Dickerson and the DOTD. The question of the percentage of fault to be allocated a party under comparative negligence is a question of fact. Since the entire record is before us, we will make this factual determination instead of remanding the case to the trial court. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). Comparing the fault of DOTD and Dickerson, we conclude that DOTD was 60% at fault and Dickerson 40% at fault. Accordingly, Dickerson's claim for damages will be reduced by 40%.

DOTD'S RIGHT OF CONTRIBUTION
DOTD asserts that the trial court should have reduced the awards made to all plaintiffs because they dismissed AMC prior to trial without amending their pleadings, in which they alleged the negligence of AMC as a cause of the accident. In addition, DOTD argues that for the very same reason, the awards to Julie Olivier and Mary Holmes should have been reduced by their dismissal of Gary Dickerson.
Plaintiffs, Julie Olivier and Mary Holmes, alleged the joint, concurrent and/or independent negligence of DOTD, AMC and Gary Dickerson in their respective petitions for damages. Dickerson urged the concurrent and/or independent negligence of DOTD and AMC in his petition for damages. Prior to trial, Olivier and Holmes voluntarily dismissed their action against Dickerson as of non-suit without prejudice to their claims against the other named defendants. Subsequently, all plaintiffs dismissed their respective claims against AMC, with an oral covenant not to sue, while reserving their rights against all other parties. Plaintiffs' petitions were not amended to reflect the dismissals.
At the outset, we note that this accident was caused by the concurrent fault of DOTD and Dickerson. As to plaintiffs, Olivier and Holmes, the concurrent fault of DOTD and Dickerson make them solidary obligors under Civil Code Article 2324. See also Efferson v. Louisiana, Department of Transportation & Development, supra. In response to the suits filed by Olivier and Holmes, DOTD third partied Dickerson seeking contribution. Article 2103 of our Civil Code, which was in effect at the time of this accident, permitted this procedure. It provides in pertinent part:
"A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or denies liability on the obligation sued on by the plaintiff."
As stated earlier, plaintiffs, Olivier and Holmes, voluntarily dismissed their suits against Dickerson as of non-suit; Olivier and Holmes did not release Dickerson. Mullin v. Skains, 252 La. 1009, 215 So.2d 643 (1968). Since the trial court did not find Dickerson at fault, DOTD's third party demands against him were dismissed. For reasons already given, we find Dickerson was at fault, thus, DOTD is entitled to judgment on its third party demands against Dickerson for contribution.
We do not agree with the argument propounded by DOTD that the awards of Holmes and Olivier must be reduced because of their dismissal of Dickerson. In Mullin v. Skains, supra, our Supreme Court noted that a voluntary dismissal as of non-suit of a defendant does not amount to release by plaintiff of a joint tortfeasor. According to Mullin, because Article 2103 allows a tortfeasor to enforce contribution by the use of the third party demand, plaintiff's voluntary dismissal of a party who is found to be a joint tortfeasor does not deprive the co-tortfeasor of his right to contribution.
In the instant case, DOTD has not been deprived of its right to contribution. Dickerson was not released from liability, he was dismissed as of non-suit. Thus, DOTD is entitled to seek contribution from Dickerson *826 by way of its third party demand. The first paragraph of Article 2103 governs the extent of a solidary obligor's right to contribution; it provides:
"When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi-contract, an offense, or a quasi-offense, the debt shall be divided between them. If the obligation arises from a contract or a quasi-contract, each debtor is liable for his virile portion. If the obligation arises from an offense or a quasi-offense, it shall be divided in proportion to each debtor's fault." (Emphasis added).
Since we have found Dickerson 40% at fault, DOTD is entitled to contribution to that extent.
Regarding the dismissal of AMC, we observe that DOTD was given ample opportunity to establish fault on the part of AMC. AMC was not shown to have been a joint tortfeasor with DOTD and Dickerson. Thus, DOTD had no right to contribution from AMC. Consequently, DOTD is not entitled to a reduction of plaintiffs' awards because of the dismissal of AMC by plaintiffs with the oral covenant not to sue.[4] See Wall v. American Employers Insurance Company, 386 So.2d 79 (La.1980).

QUANTUM
DOTD complains that the awards allowed plaintiffs are excessive. Plaintiffs have not answered the appeal and do not question the adequacy of the awards.
In reviewing quantum awards, an appellate court can disturb an award made by the trial court only where the record indicates that the trier of fact abused its much discretion in making an award. Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691 (La.1981).
The trial court awarded Gary Dickerson $37,500.00. The lower court found the following damages: Dickerson suffered scarring of the face, a broken ankle, a broken chestbone and a broken finger; there was $4,000.00 in property damage to Dickerson's Jeep; Dickerson was out of work for two and a half months following the accident.
Our review of the record confirms the findings of the trial court in this connection. Additionally, Dickerson testified that he occasionally experiences discomfort due to the broken ankle. In light of the above, we do not find that the trial court abused its much discretion in its award to Dickerson.
The trial court awarded Mary Holmes $110,000.00. This award was for the loss of love and affection suffered by Mrs. Holmes by the death of her daughter and for the pain and suffering endured by Miss Moore prior to her death.
Miss Moore suffered massive internal injuries as a result of the accident. According to Dr. Foster, the attending physician, he had never seen such a massive degree of trauma in a living patient. Dr. Foster stated that Miss Moore asked him if she was going to die. He added that she experienced a great deal of pain before her death.
The relationship between Miss Moore and her mother was very close. The evidence presented at trial established that Miss Moore had previously been hospitalized for a long period of time (approximately one year) and Mrs. Holmes remained by her bedside during this entire time. This caused them to grow even closer to one another. At the time of her death, Miss Moore was managing a business establishment owned by her mother. Miss Moore was nineteen years old at the time of her death.
We do not find that the trial court abused its much discretion in its award to Mrs. Holmes.
The trial court awarded Julie Olivier $1,100,000.00. The trial court found that Miss Olivier suffered the following physical injuries as a result of the accident: Loss of the right arm below the elbow, loss *827 of the right ear, retrograde amnesia, extensive scarring of the face and body, loss of the spleen, and a subdural hemotoma. Damages were also awarded to Miss Olivier for loss of wages, medical expenses, pain and suffering, and mental anguish, past and future.
In his written reasons for judgment, the trial judge stated:
"... This Court considered that the loss of an arm for a person so young is an extremely traumatic and disabling injury in and of itself. To be able to compensate a young lady who is not married and has life to go through facing the loss of an arm is a very difficult thing to do indeed. This Court considers the mental anguish and suffering which Julie Oliver (sic) must go through for the rest of her life due to the loss of this arm and the inability to perform certain jobs due to that loss as being a substantial reason for damages to be awarded in a substantial amount in this matter...."
The record establishes that Miss Olivier has undergone six operations on her right arm relating to the amputation; skin grafts were required. She still experiences phantom pain in the arm and has been unable to retain gainful employment because of her disability. Miss Olivier testified that she desires to have reconstructive surgery performed on the right ear which was partially amputated. She has suffered epileptic seizures since the accident and must take medication to control the seizures. Family members testified that she was an outgoing person before the accident but has now become withdrawn. The testimony revealed that she is very conscious of individuals staring at her because of her disfiguring injuries. Miss Olivier was nineteen years old at the time of the accident.
We have no doubt that Miss Olivier has suffered a great deal as a consequence of this accident. As the trial court stated, it is difficult to determine the amount of compensation due a young person traumatized as Miss Olivier has been. We cannot say that the trial court abused its much discretion in making this award.
Therefore, the awards made by the trial court will be affirmed subject to a reduction of Dickerson's award by the percentage of fault attributable to him, i.e., 40%

OTHER ISSUES
DOTD raises a number of other issues on appeal. The issues which have been briefed by DOTD will be addressed. See Rule 2-12.4 Uniform RulesCourts of Appeal.
DOTD asserts that the trial court erred in admitting evidence relating to repairs and conditions of Interstate 10 subsequent to the date of the accident.
It is well settled that evidence of changes, repairs or corrective measures taken subsequent to an accident, for the purpose of preventing a similar recurrence, is not admissible to show negligence or establish an admission of fault. Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La.App. 1st Cir.1975), writ denied, 325 So.2d 279 (La.1976).
While we agree with DOTD that evidence of repairs to the shoulder subsequent to the accident to establish DOTD's negligence was inadmissible, no prejudicial error resulted from the introduction of the evidence. There is ample evidence in the record to support a finding of negligence on the part of DOTD without resorting to evidence of post accident repairs. McDaniel v. Welsh, 234 So.2d 833 (La.App. 1st Cir.1970). Hence, this argument is without merit.
DOTD contends that the trial court erred in allowing an expert witness to testify concerning the accident report compiled by the investigating officer which the expert had reviewed.
The record reveals that upon cross-examination of DOTD's expert, Mr. O'Shea, plaintiffs sought to discredit his testimony by use of a deposition he had given earlier regarding his opinion as to the maneuvering of the Jeep as it encountered the rut. Mr. O'Shea maintained that there was no evidence to indicate that the right wheels *828 of the Jeep scrubbed against the edge of the pavement. The investigating officer, Officer Cheramie, disputed the opinion of Mr. O'Shea in this regard. At the time Mr. O'Shea gave his deposition, he had been afforded an opportunity to review the accident report prepared by Officer Cheramie. Plaintiffs' questions to Mr. O'Shea were designed to ascertain from him the basis for his conclusion that the right wheels did not scrub against the edge of the pavement since this opinion was inconsistent with the findings reported by Officer Cheramie.
We do not find that DOTD was prejudiced in any manner by plaintiffs' alluding to the accident report. Officer Cheramie testified in court. Officer Cheramie was cross-examined. The countervailing views of Mr. O'Shea and Officer Cheramie regarding the question of whether the right wheels of the Jeep had scrubbed against the edge of the pavement were fully explored by opposing counsels at trial. The trial court was provided with ample evidence in support of both views. Therefore, we find this argument without merit.
In addition, it is argued by DOTD that the trial court erred in refusing to allow questioning of Dickerson relating to prior convictions.
A review of the testimony in question reveals that DOTD was given full opportunity to question Dickerson regarding prior convictions. Only after counsel for DOTD became argumentative with Dickerson, as to Dickerson's appreciation of the consequences of a bond forfeiture, did the trial court step in upon objection and refuse to allow DOTD to question Dickerson any further along those lines. On a number of occasions, DOTD, during its cross-examination of Dickerson, was given the opportunity to refer to a deposition given by Dickerson prior to trial in order to impeach Dickerson's credibility by calling the court's attention to inconsistencies. We do not find merit to this argument.
DOTD also argues that the trial court erroneously maintained exceptions of no cause of action filed by Julie Olivier and Mary Holmes without affording DOTD an opportunity to amend its pleadings. There is absolutely no merit to this contention asserted by DOTD. The trial court did grant DOTD an opportunity to amend its pleadings, but DOTD chose not to do so.
Finally, DOTD contends that the trial court erred in denying it a hearing on its motion for a new trial. DOTD suggests, in its brief, that it was denied the opportunity to fully amplify its arguments relating to the Brandenburger case.
On appeal, DOTD has been given full opportunity to expound on its argument relating to the Brandenburger case. As we noted earlier, regardless of the propriety of that decision, DOTD did not prove that the Jeep was defective. Therefore, this argument is without merit.
For the above and foregoing reasons, the judgment appealed from is affirmed in part, reversed in part and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Mary Holmes, and against the defendant, State of Louisiana, through the Department of Transportation and Development, in the full sum of ONE HUNDRED TEN THOUSAND AND NO/100 ($110,000.00) DOLLARS, with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Third Party Plaintiff, State of Louisiana, through the Department of Transportation and Development, and against Third Party Defendant, Gary Dickerson, for a sum equal to forty (40%) per cent of any sums paid by Third Party Plaintiff in satisfaction of the judgment rendered against it in favor of Mary Holmes, together with legal interest from the date of such payment by the State of Louisiana, through the Department of Transportation and Development.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the third party demand filed by the State of Louisiana, through the Department of Transportation and Development against American *829 Motors Corporation and that filed by American Motors Corporation against the State of Louisiana, through the Department of Transportation and Development are dismissed with prejudice.
Costs of this suit, both at the trial level and on appeal, are assessed on the basis of 60% to the State of Louisiana, through the Department of Transportation and Development and 40% to Gary Dickerson.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I concur in the majority holding in this case. The majority opinion takes note of the enlarged scope of risks covered by the State's duty to maintain highway shoulders established by Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979). It also notes the motorist duty to act prudently once the motorist runs off the highway onto a shoulder and the fact that the motorist will be held accountable for substandard conduct after leaving the highway and attempting reentry to the highway. Sinitiere v. Lavergne, 391 So.2d 821 (La. 1980) and Thomas v. Jackson, 442 So.2d 1186 (La.App.2d Cir.1983), writ denied, 445 So.2d 435 (La.1984).
I concur in the result reached by the majority opinion in this case and the cases with which it is consolidated on the basis of the facts as they relate to the second principle mentioned above, that is, that Gary Dickerson was guilty of substandard conduct once he drove his vehicle off of the portion of the highway designed for travel. This conduct was a cause in fact of the accident and as a result Dickerson was 40% at fault in comparing his fault with that of DOTD. In this regard I concur in the majority holding that the trial court erred in not finding Dickerson's driving ability was impaired at the time of the accident. Even if his faculties were not significantly impaired, his conduct after leaving the highway should be judged as negligent and substandard.
I do not agree with the majority's interpretation of Rue v. State, Dept. of Highways, supra, which holds that the rule announced in Rue covers some qualities of negligence of motorists who stray from the highway onto shoulders but does not cover all such qualities of negligence. The majority interprets Rue as being applicable to persons who inadverently stray from the highway but not to persons who may do so because their driving abilities may be impaired by consumption of alcohol or drugs. I do not question the reasonableness of such a position, and in view of the adoption of the comparative negligence standard subsequent to the rendition of the decision in Rue, it would be quite appropriate for the Supreme Court to emend its policy decision announced in Rue to adopt the holding of the majority in this case. When contributory negligence was a complete defense in this State the rule of Rue was an equitable rule calculated to avoid the harsh results of the complete defense. One may reasonably maintain that, from a policy standpoint, the rule of Rue is no longer necessary.
I differ with the majority in its interpretation of Rue in that I do not believe that the language employed in Rue is susceptible to the qualitative dichotomy which the majority makes, however reasonable its position may be. As I read the language of Rue, it is all-inclusive and covers any and all types of substandard conduct which cause motorists to stray from the highway onto the shoulder. I think the language covers drunken or drugged drivers as well as inattentive drivers who inadvertently run off the highway. The language of Rue may seem to focus on mere inadvertence. However, attention to the language quoted in the majority opinion refers to "substandard" conduct; inadvertence appears to have been referred to more as an illustrative matter, or for emphasis, rather than as a qualitative limitation or circumscription of the type of negligence included in the risk.
*830 The language in Rue of special pertinence is as follows:
"Focusing on plaintiff's `substandard' conduct the question is whether the risk of injury from striking an unexpected, negligently maintained highway shoulder was a risk reasonably related to plaintiff's failure to drive entirely on the paved portion of the highway. We conclude that it was not. A motorist has a right to assume that a highway shoulder, the function of which is to accommodate motor vehicles intentionally or unintentionally driven thereon, is maintained in a reasonably safe condition. Conversely the Highway Department's duty to maintain a safe shoulder encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder."
I think it is significant that the Supreme Court used the language "intentionally or unintentionally" and that the scope of the Department's duty "encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on or partially on, the shoulder." (Emphasis supplied) Considering the attention being given to drunken driving in the State, it can hardly be denied that driving by persons while they are intoxicated is a foreseeable risk which the Department must anticipate.
The matter focused upon in this concurrence is fundamentally a question of policy which might well be reconsidered by our high court, particularly now that comparative negligence is available to the courts for the purpose of adjusting equities between the State's substandard conduct in faulty maintenance of highway shoulders and the faulty conduct of drivers who "for any number of reasons" find themselves driving on the shoulders. In any event, in view of the position taken by the majority, a clarification of Rue with respect to the question raised above would be of great interest to all concerned.
NOTES
[1] The physician, who had prescribed the medication for Dickerson, opined that at the time of the accident the pills would have had little or no effect on Dickerson.
[2] In the instant case, the trial court found that Dickerson had no knowledge of the defective shoulder. A review of the record convinces us that the lower court was correct in this determination.
[3] La.C.C. Art. 2323 provides:

"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss." (Emphasis added).
[4] The dismissal of AMC with a covenent not to sue would have deprived DOTD of its right to contribution if AMC had been found to be a joint tortfeasor.