# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**18-73**

**GAYNELWYN SONNIER**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT**

*Consolidated With*

**18-74**

**MARILYN CLARK**

**VERSUS**

**STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, ET AL.**

*Consolidated With*

**18-75**

**ELWOOD SONNIER**

**VERSUS**

**THE UNOPENED SUCCESSION OF LACY N. JOHNSON, ET AL.**

**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NOS. C-2007-190, C-2007-186 & C-2007-188
HONORABLE ERROL DAVID DESHOTELS, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Stacey Allen Moak**
**Special Assistant Attorney General**
**P. O. Box 77651**
**Baton Rouge, LA 70879-7651**
**Telephone: (225) 751-6300**
**COUNSEL FOR:**
    **Defendant/Appellee – State of Louisiana, Department of Transportation**
    **and Development**

**Dorwan G. Vizzier**
**Broussard, Halcomb & Vizzier**
**P. O. Box 11875**
**Alexandria, LA 71315**
**Telephone: (318) 487-4589**
**COUNSEL FOR:**
    **Plaintiff/Appellant – Gaynelwyn Sonnier**

**Judi F. Abrusley**
**P. O. Box 1114**
**Oakdale, LA 71463**
**Telephone: (318) 335-9771**
**COUNSEL FOR:**
    **Plaintiff/Appellee – Marilyn Clark**

**THIBODEAUX, Chief Judge.**

The plaintiff, Gaynelwyn Sonnier, appeals interlocutory judgments limiting her experts' testimony, along with a final judgment memorializing the jury's verdict in favor of the defendant, State of Louisiana, Department of Transportation and Development (DOTD), involving a single vehicle accident caused by an allegedly defective highway. Finding no abuse of discretion on the part of the trial judge and no manifest error on the part of the jury, we affirm the judgments of the trial court.

I.

## ISSUES

We must decide:

(1) whether the trial court abused its discretion in limiting the testimony of traffic experts Duaine Evans and Douglas Robert, precluding their opinions on "unreasonable risk of harm"; and

(2) whether the trial court abused its discretion in limiting the testimony of traffic experts Duaine Evans and Douglas Robert, precluding their opinions on whether a 1949 DOTD project was a "major construction"; and

(3) whether the jury manifestly erred in finding that the accident site did not have defects that created an unreasonable risk of harm.

II.

## FACTS AND PROCEDURAL HISTORY

This case involves a tragic accident on Louisiana Highway 10 in Allen Parish near Oakdale. Two young women in their early twenties were killed when their vehicle failed to navigate a curve in the road, traveled across the

opposing lane and its shoulder, and hit a tree stump in the ditch opposite their lane of travel. The driver of the vehicle was Lacy Johnson. Her passenger was Breann Sonnier. Breann Sonnier's mother, Gaynelwyn Sonnier, filed suit against the DOTD, alleging faulty construction and maintenance of the roadway and the ditch. Breann Sonnier's father, Elwood Sonnier, and Lacy Johnson's mother, Marilyn Clark, filed similar suits. The three suits were consolidated.[1] Prior to trial, the suits of Marilyn Clark and Elwood Sonnier were settled.

Also prior to trial, the trial court made interlocutory rulings on various motions in limine, two of which precluded the plaintiff's traffic experts from giving opinions on whether a DOTD project was a "major reconstruction" and on whether the subject roadway created an "unreasonable risk of harm" for drivers. The court also ruled that a lab report would be admitted at trial showing that Lacy Johnson had a 0.10% blood alcohol concentration (BAC) at the time of her death.

Following an eight-day jury trial, the jury rendered a verdict finding that the roadway at issue did not contain defects creating an unreasonable risk of harm for drivers. The plaintiff, Gaynelwyn Sonnier, appeals the trial court's interlocutory judgments[2] limiting the testimony of her experts for trial, and she appeals the final judgment dismissing her suit based upon the jury verdict in favor of the DOTD. She asks this court to reverse those rulings, allocate fault between

---

[1]The three consolidated suits are *Gaynelwyn Sonnier v. State of Louisiana, Department of Transportation and Development*, trial docket no. C-2007-190, appeal no. 18-73; *Marilyn Clark v. State of Louisiana, Department of Transportation and Development, et al.*, trial docket no. C-2007-186, appeal no. 18-74; *Elwood Sonnier v. The Unopened Succession of Lacy N. Johnson, et al.*, trial docket no. C-2007-188, appeal no. 18-75.

[2]"Although an interlocutory judgment may itself not be appealable, it is nevertheless subject to review on appeal when a final, appealable judgment has been rendered in the case." *Hayward v. Hayward*, 12-720, p. 7 (La.App. 1 Cir. 3/18/13), 182 So.3d 966, 970.

the driver and the DOTD, and award damages to her between $500,000 and $3,000,000 for the loss of her daughter Breann.

## III.

## STANDARDS OF REVIEW

A trial court has great discretion in evidentiary matters, and its decisions regarding motions in limine are reviewed using the abuse of discretion standard. *See Scott v. Dauterive Hosp. Corp.*, 02-1364 (La.App. 3 Cir. 4/23/03), 851 So.2d 1152, *writ denied*, 03-2005 (La. 10/31/03), 857 So.2d 487; *see also Heller v. Nobel Ins. Group*, 00-261 (La. 2/2/00), 753 So.2d 841.

The long-standing standard for appellate review of jury determinations of fact was set forth in *Mart v. Hill*, 505 So.2d 1120 (La.1987). There, the court established a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) determine that the record establishes that the trial court's finding is clearly wrong (manifestly erroneous). *Id.*

"[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Stobart v. State through DOTD*, 617 So.2d 880, 882 (La.1993). Additionally, "the reviewing court must always keep in mind that 'if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Id*. at 882-83 (quoting *Housley v. Cerise*, 579 So.2d 973, 976 (La.1991)).

IV.

## LAW AND DISCUSSION

The 1999 version of La.R.S. 48:35, which applies to this 2006 accident, imposes a duty upon DOTD "to maintain, repair, construct, or reconstruct any public road, highway, bridge, or street, or portion thereof in a manner that is not unreasonably dangerous for a reasonably prudent driver." Specifically, this is the language from La.R.S. 48:35(F)(1)(a)[3] which was newly-enacted law in 1999, along with subparagraphs (G) through (I).

The newly-enacted law from La.R.S. 48:35(F) through (I) was promulgated from Section 1 of Act. No. 1223, originating with Senate Bill 858 of the regular legislative session of 1999. Louisiana Revised Statutes 48:35(F)(1)(b) provided that when a public road is maintained or constructed according to the standards in place at the time, there "shall be a presumption" that the road was maintained or constructed in a "reasonably safe condition." Louisiana Revised Statutes 48:35(F)(1)(c) provided that when a public road does not conform to standards adopted "subsequent to" the approval of the maintenance or construction, "such nonconformity shall not render any such public road . . . unreasonably dangerous or defective." Louisiana Revised Statutes 48:35(F)(2) provided that "[w]hen determining whether or not an unreasonably dangerous condition exists . . . if a standard, regulation, or guideline is not directly applicable to the maintenance, repair, construction, or reconstruction, then evidence of failure to adhere to such standard . . . shall not be admissible in a court proceeding for any purpose."

---

[3]It is now La.R.S. 48:35(E)(1)(a).

4

Louisiana Revised Statutes 48:35(G) provided that the "provisions of this Section shall not affect the requirement" that the DOTD "prioritize the repair, maintenance, construction, or reconstruction of public roads . . . based on the need for repair" beginning with those "most in need" and ending with those "least in need" pursuant to "the priority program set forth in R.S. 48:228 through 233." Louisiana Revised Statutes 48:35(H) provided that the above priority program was an administrative process and did not create "an independent cause of action for personal injury or property damage." Louisiana Revised Statutes 48:35(I) provided that the provisions of Section 1 "shall not apply to regulations affecting the installation or design of signs imposed by the United States Department of Transportation."

Section 2 of Act 1223 stated that "[t]he provisions of this Act are intended to legislatively overrule that portion of *Aucoin v. State Through the Dept. of Transp. And Development*, 97-1938 (La. 4/24/98), 712 So.2d 62, which imposes liability on the [DOTD] for failing to maintain and/or reconstruct an existing highway to modern standards."[4]

> DOTD has a duty to maintain the public roadways, including adjacent shoulders and areas in the DOTD's right-of-way, in a condition that is reasonably safe and does not present an unreasonable risk of harm to the motoring public exercising ordinary care and reasonable prudence. *Campbell v. State, Through Depart. of Transportation and Development*, 1994-1052, p. 6 (La.1/17/95), 648 So.2d 898, 901-902; *Brown v. Louisiana Indem. Co.*, 1997-1344 p. 3 (La.3/4/98), 707 So.2d 1240, 1242; *Oster v. Dept. of Transp. & Development*, 582 So.2d 1285, 1289-91 (La.1991). This duty, however, does not render DOTD the guarantor for

---

[4]In the partially overruled *Aucoin*, the supreme court had affirmed the trial court's finding that the road at issue was unreasonably dangerous because of the combination of dangerous defects that DOTD allowed to accumulate on an older highway, including a drop off shoulder, a nonrecoverable sloping, and limited horizontal clearance. There, the trial court had also found that DOTD "failed to prioritize proper maintenance." *Id*. at 64.

the safety of all of the motoring public or the insurer for all injuries or damages resulting from any risk posed by obstructions on or defects in the roadway or its appurtenances. *Netecke v. State ex rel. DOTD*, 1998-1182, 1998-1197 p. 8 (La.10/19/99), 747 So.2d 489, 495. Further, this court has held that DOTD's failure to design or maintain the state's highways to modern standards does not establish the existence of a hazardous defect in and of itself. *Myers v. State Farm Mut. Auto. Ins. Co.*, 493 So.2d 1170, 1173 (La.1986). Whether DOTD has breached its duty to the public depends on all the facts and circumstances determined on a case by case basis. *Campbell*, 1994-[1052,] p. 6, 648 So.2d at 901-902.

*Forbes v. Cockerham*, 08-762 (La. 1/21/09), 5 So.3d 839, 858-59.

A reviewing court should afford considerable weight to an administrative agency's construction and interpretation of its rules and regulations adopted under a statutory scheme that the agency is entrusted to administer, and its construction and interpretation should control unless they are found to be arbitrary, capricious, or manifestly contrary to its rules and regulations. *See, Dixie Electric Membership Corp. v. Louisiana Public Service Comm'n.*, 441 So.2d 1208, 1211 (La.1983); *see, also, In the Matter of Recovery I, Inc.*, 1993-0441 (La.App. 1st Cir.4/8/94), 635 So.2d 690, 696, *writ denied*, 1994-1232 (La.7/1/94), 639 So.2d 1169.

. . . .

This court has previously described the unreasonable risk of harm criterion as a guide in balancing the likelihood and magnitude of harm against the social utility of the thing, all the while considering a broad range of social and economic factors, including the cost to the defendant of avoiding the harm, as well as the risk and the social utility of the party's conduct at the time of the accident. *Netecke*, 1998-1182, 1998-1197 p. 14–15, 747 So.2d at 498. In every determination, all the circumstances surrounding the particular accident under review must be considered to determine whether DOTD's legal duty encompassed the risk which caused the plaintiff's damages. *Oster*, 582 So.2d at 1289.

*Id.* at 859-60.

The highway department's duty to maintain safe shoulders encompasses the foreseeable risk that for any

number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder. *Id.* This duty extends to drivers who are slightly exceeding the speed limit or momentarily inattentive. *Ledbetter v. State, Through Louisiana Dept. of Transp. and Development*, 502 So.2d 1383 (La.1987). As to the area off the shoulder of the road, but within the right of way, DOTD owes a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others, such as pedestrians, who are using the area in a reasonably prudent manner. *Oster v. Department of Transp. and Development, State of La.*, 582 So.2d 1285 (La.1991) (where off road motorcyclist hit a drainage ditch within DOTD's right of way, DOTD not liable because DOTD has no duty to maintain every inch of property within its control neatly mowed or face the prospect of tort liability).

*Cormier v. Comeaux*, 98-2378, p. 7 (La. 7/7/99), 748 So.2d 1123, 1127.

### Plaintiff's Experts and Unreasonable Risk of Harm

Ms. Sonnier contends that the trial court erred in excluding the opinions of her professional engineering experts, Duaine Evans, P.E., and Douglas Robert, P.E., on the narrow issue of whether the road contained a defect creating an "unreasonable risk of harm" for reasonably prudent drivers. It should be noted at this point that Mr. Evans and Mr. Robert did provide testimony regarding their opinions that the roadway contained defects. Mr. Evans testified that the ten-foot travel lanes were too narrow; that the two-foot-wide shoulders should have been four feet wide; that the foreslope of the ditch was too steep at 1:1 and should have been 1:3 to allow a vehicle to recover after leaving the pavement; and that the stump "at the toe of the slope" was an impermissible obstruction.

However, Mr. Evans, who was testifying as an expert in traffic engineering and accident reconstruction, did not reconstruct the accident; he did not inspect the vehicle or perform a damage and crash analysis of the vehicle; he

7

did not calculate what path the vehicle would have taken if the shoulders had been wider and flatter, or where the vehicle might have gone if it had not hit the stump. He relied heavily on the police report regarding the stump as causing all of the vehicle's damage and regarding where the vehicle left the road. He thought the police report said the driver was traveling almost parallel to the road when the left tires left the pavement causing him to opine that she was "following the curve" with no loss of control and still inputting steering, even though she was going eastbound in the westbound lane when she left the road and entered the shoulder. Mr. Evans opined that the opposing shoulders were designed to benefit even drivers who crossed the opposing lane to access the shoulder driving in the wrong direction, and he denied the characterization that the driver actually had twelve feet of width, ten feet of travel lane width and two feet of shoulder width, to correct her path after crossing the center line.

The trial court permitted all of Mr. Evans's testimony except for a few pages from his total deposition of over 160 pages. The reasoning of Judge Cole that was adopted by Judge Deshotels was in part to preclude the terminology "unreasonably dangerous" or "unreasonable risk of harm" because that language constitutes the legal test to be decided by the jury. The plaintiff asserts that this was error, quoting La.Code Evid. art. 704, which states:

> Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.

Here, the trial court had multiple reasons for limiting Mr. Evans's testimony which involved keeping his testimony within the bounds of his expertise.

[T]he Court is accepting Mr. Evans as an expert in the field of traffic engineering. He is not an expert in the fields of highway engineering, construction, or design, or human factors engineering. And he wasn't proffered as that.

. . . .

Whether the State has breached its duty by knowingly [] maintaining a defective or unreasonably dangerous roadway, depends on the facts and circumstances of each case. This is a task for the trier of fact. To determine this risk, the trier of fact will consider the broad range of social, economic and moral factors and the social utility of the plaintiff's conduct at the time of the accident. Again he is not being offered as a human factors expert, although that is kind of - - it is a field that is not far from it, engineering expert. The cost to the State in avoiding the risk is one of the factors that has to be considered in this utility-risk evaluation. And that is up to the trier of fact. This includes not only the cost to fix the instant deviation but other similar deviations on Highway 10. The Court does not believe that he can give an opinion as to whether the roadway is unreasonably dangerous or not because it falls outside his area of expertise. It is not included in his education, training or methodology. The specialized knowledge of Mr. Evans [is] the field of traffic engineering so it cannot assist the trier of fact in making this utility-risk determination. So he can't say, oh because of these factors it is unreasonably dangerous because he has told this Court that he doesn't look at costs or those kinds of things, nor is he a human factors engineer. So I don't believe that he can give an opinion as to whether the condition of the road at the site of the accident is unreasonably dangerous or not. He can't make that statement. He can talk about what hazards are there.

The trial court's reasoning follows the requirements set forth above in *Forbes*, 5 So.3d 839. In addition, the trial court found that Mr. Evans did not examine the crash history at the site or the work records on the road; nor did he address feasible countermeasures or look at similar defects.

In support of her position, Ms. Sonnier cites *Rosen v. State ex rel. Dep't of Transp. & Dev.*, 01-499 (La.App. 4 Cir. 1/30/02), 809 So.2d 498, *writ*

9

*denied*, 02-605 (La. 5/10/02), 815 So.2d 842, which affirmed the trial court's judgment in favor of the plaintiff after a bench trial. There, the plaintiff hydroplaned into a bridge abutment that did not have a guardrail right after a reconstructed portion of the roadway was prematurely opened to traffic and before the 1994 plan was completed; the plan called for a guardrail, which was installed only days after the accident. The trial court allowed one of the plaintiff's experts, Mr. James Clary, to testify that "an unguarded bridge end on a highway of [that] classification [was] unreasonably dangerous." *Id*. at 505. Even though he testified that an AASHTO guidelines manual classified the absence of a guardrail as unreasonably dangerous, and then was not able to produce corroborating evidence, the appellate court did not find the trial court in error for allowing him to testify regarding the "ultimate issue" under La.Code Evid. art. 704. *Id*. at 508. The only reason the appellate court gave was that "DOTD did not object to a substantial majority of Mr. Clary's testimony; therefore, it cannot now complain that Mr. Clary declared the accident site 'unreasonably dangerous.'" *Id*. Moreover, Mr. Clary was qualified in the fields of highway design, engineering, signage, safety, and maintenance. This case is both factually distinguishable and not binding in this court.

The stump was on the backslope of the ditch, not at the toe of the foreslope as indicated by Mr. Evans. The jury heard testimony that DOTD removed tree limbs after Hurricane Katrina came through in 2005, but the plaintiff presented no work orders for tree removal. DOTD Maintenance Supervisor Damon Cooley testified at trial that the National Guard was removing trees after the hurricane. Wade Wilson testified that he saw DOTD cutting trees but admitted that he did not see DOTD cut the stump at issue.

When Mr. Evans, who was eighty-five and in ill health, retired, the plaintiff retained Mr. Robert, who had the same qualifications and used the same methodology. DOTD again filed a motion to limit the testimony of the plaintiff's expert, Mr. Robert. When the plaintiff filed a motion for reconsideration of the earlier ruling by Judge Cole, Judge Deshotels, after a hearing and after taking the issue under advisement, denied the motion for reconsideration. Both experts testified regarding conditions that in their opinions were hazardous. No proffer was made of the excluded testimony. The question of unreasonable risk of harm is a question of fact for the jury. *Fontenot v. Patterson Ins.*, 09-669 (La. 10/20/09), 23 So.3d 259. The jury in this case found no defect creating an unreasonable risk of harm. There is no manifest error.

### *Plaintiff's Experts and Major Reconstruction*

Ms. Sonnier contends that the trial judge erroneously excluded the testimony of her experts regarding whether the roadway at issue had undergone a "major reconstruction" such that certain standards had to be applied; and that not meeting those standards constituted a breach of DOTD's duty to maintain the roadway. More specifically, Ms. Sonnier argues that the 1946 DOTD guidelines for major reconstruction included four-foot-wide shoulders, a 3:1 side slope, and twenty feet of horizontal clearance beyond the travel lanes, and that these guidelines apply to the roadway which was converted from gravel to asphalt in 1949. Mr. Evans testified that he reviewed the final estimate for the 1949 project and that it constituted a "major reconstruction" that required application of the 1946 guidelines. DOTD's representative testified that the conversion to asphalt in 1949 was an overlay project, not a major reconstruction. Judge Cole found that

whether or not the project was a major reconstruction could only be determined by design engineers or construction engineers and that Mr. Evans and Mr. Robert were traffic engineers.

Mr. Evans's bachelor's degree in the 1950s was in electrical engineering, and he took a post-graduate course in traffic engineering which he said included geometric design of highways. His work has been largely consulting work. Ms. Sonnier argues that Mr. Evans's affidavit shows that he was qualified by fifty years of experience. In his affidavit, however, he admits that he was "not generally involved in the specific design or even in the maintenance of roads and highways."

The court stated as follows:

As I said earlier a traffic engineer, they are not responsible for infrastructure of the highway system. The Court doesn't believe that his education, experience and methodology qualifies him to . . . evaluate the project proposed, the cost of same, and make a determination that this is or is not major reconstruction. The Court believes it is beyond his area of expertise and not included in his methodology. Therefore, the Court does not believe he can give an opinion that the 1949 project for Highway 10 was a major reconstruction. He can talk about the AASHTO Standards and, you know, why it is unsafe there. I don't think he can make that one opinion. But he can certainly talk about the roadway and what he believes are a hazard there.

We find no abuse of discretion in the trial court's ruling on this issue. In *Forbes*, 5 So.3d 839, which is virtually on-point with the present case, the Louisiana Supreme Court reversed the first circuit's judgment in favor of the plaintiff, finding that the evidence did not support a reconstruction of the roadway at issue. There, a legally intoxicated driver with a 0.12% BAC was "straightening out the curves" in a section of Highway 37 by driving south in the opposing north-

bound lane of the two-lane highway as he approached each curve. *Id.* at 843. The driver's car went into a ditch, struck at least one tree, caving in the roof and ejecting both the front-seat passenger and the rear-seat passenger. The front-seat passenger was killed, and the back-seat passenger, who was the driver's nine-year-old nephew, was thrown into the road and hit by another vehicle. He survived.

The child's expert in *Forbes* testified that the roadway at the accident site had been reconstructed in 1975 and that DOTD had failed to comply with its own and AASHTO's design standards. He further testified that the substandard lane width, shoulder width, shoulder slope ratio, and right of way with trees was a cause-in-fact and legal cause of the accident. The jury found the driver 60% at fault and DOTD 40% at fault. The trial court granted DOTD's motion for a judgment notwithstanding the verdict (JNOV), and the first circuit reversed on appeal, reinstating the jury's verdict. The Louisiana Supreme Court reversed, finding that the car was already out of control before it left the road, finding the driver to be 100% at fault, and reinstating the trial court's JNOV in favor of DOTD. In addressing the design and maintenance of the roadway, the supreme court found that the 1975 project/plan, which had "Reconstruct Base and Surfacing" in its title, was nevertheless *not* a "major reconstruction" requiring the application of 1975 standards. DOTD experts had testified that the plaintiff's expert was the only person who would characterize the 1975 overlay or preservation project as a major reconstruction. Those witnesses testified that reconstruction projects took four to five years to develop, cost $500,000 to $600,000 per mile in the 1970s, involved federal funds, required a full topographic survey, required upgrades to the vertical and horizontal geometry of the road, and required the purchase of land for additional rights-of-way. Conversely, the project

13

in *Forbes* was done by an independent contractor, to be completed in sixty days at $520,000 for all 4.5 miles, did not require additional rights-of-way, and required no work on the existing shoulders.

We note that the plaintiff's expert in *Forbes* was Mr. James Clary, and he was allowed to give his opinion on what constituted a major reconstruction. However, as seen above in *Rosen*, 809 So.2d 498, Mr. Clary had qualifications in the fields of highway design, engineering, signage, safety, and maintenance. In the present case, Mr. Evans did not have those qualifications; nor did he support his opinion on major reconstruction with proper evidence, such as the kind of information as that testified to by DOTD's engineers in *Forbes*. The plaintiff's other traffic engineer, Mr. Robert, also testified that Highway 10 had undergone a major reconstruction in 1949, using the same reasoning that the travel surface went from gravel to asphalt. Accordingly, the record supports the trial court's limitation on the testimony of the plaintiff's experts. This is no abuse of discretion in this ruling.

### *Jury's Verdict*

Ms. Sonnier contends that the jury manifestly erred in finding that the roadway contained no defect resulting in an unreasonable risk of harm that caused the passenger's injuries. We disagree. Over eight days of trial, the jury heard and saw ample evidence to support its verdict. DOTD's accident reconstructionist, Jeremy Hoffpauir, testified that Lacy Johnson simply drove her vehicle straight off the road. Trooper Anthony Scott Farris, Mr. Hoffpauir, Mr. Evans, and Mr. Robert all testified that there was no physical evidence, such as tire marks, indicating that the driver attempted to apply her brakes or input steering before she left the

roadway. Contrary to Mr. Evans's belief expressed in his deposition testimony, Trooper Farris did not believe that the driver was parallel to the road when she entered the shoulder on the other side of the highway. Trooper Farris testified at trial that the driver's car travelled straight from the east-bound lane, crossed the center line, and went off the edge of the road in a straight path with no evidence of steering or breaking.

Trooper Farris further testified that the warning sign of the curve ahead and the advisory speed was in place. DOTD's traffic engineering expert, Dr. Joseph Blaschke, and the plaintiff's expert, Mr. Robert, testified that the signage met the requirements of the Manual on Uniform Traffic Control Devices (MUTCD). Dr. Blaschke also said there was no defect in the striping, design, or speed limit. Additionally, he said the shoulder width and slope did not violate DOTD policy. Typically, plans and guidelines are adjusted because of the geometry and conditions present. Further, the stump was in a heavily wooded area, and removal of the tree would make no difference because other trees were next to the stump.

Testimony at trial indicated that the driver drove this highway every day and was familiar with the road. Mr. Hoffpauir testified that the driver could see the curve ten seconds in advance of reaching it and had time to react. He said the curve was not severe and required only nine degrees of steering, which most drivers do on a daily basis. Mr. Evans also testified that the curve was not severe and that a driver could safely negotiate the curve. All agreed that the driver had a ten-foot travel lane and a two-foot unimproved shoulder on the other side of the center line within which to correct her path and get back into her own lane. DOTD Maintenance Engineer Damon Cooley said he inspected the area and did not

15

observe a defect in the roadbed or the shoulder that could have caused this accident. Trooper Farris said no defect caused the driver to leave the road.

As previously discussed, the DOTD owes a duty to a prudent driver who is momentarily distracted, but Dr. Blaschke testified that Lacy Johnson, the driver, was more than momentarily inattentive. The plaintiff's toxicologist, Dr. Ernest Lykessa agreed. DOTD's toxicologist, Dr. Gary Wimbish, and Dr. Lykessa testified that 0.10% BAC results in cognitive impairment, blurred vision, decreased hand-to-foot-to-eye coordination, decreased perception-reaction time, and impaired judgment and reasoning. Dr. Wimbish further stated that the driver's BAC impairment more probably than not included a reduced ability to timely input a steering maneuver before the crash. Dr. Blaschke said that driver perception-reaction time is impaired at 0.08% BAC. The plaintiff's own expert, Mr. Evans, stated in his report that alcohol may have played a part in the driver's having left the roadway.

The purpose of a roadside ditch is to drain the highway. La.R.S. 48:1(17). In cases involving alcohol and/or injuries occurring in ditches, the courts usually do not find a duty of DOTD to protect against such risks. That is because the utility of the ditch is high while the conduct of the driver is not.

In *Oster v. Department of Transportation and Development, State of Louisiana*, 582 So.2d 1285, 1289 (La.1991) (emphasis added), the court stated the following:

> We begin by recognizing, as did the court of appeal, that the drainage ditch in question serves a useful purpose. Draining ditches similar to the one involved in this case are a common feature along the roads and highways throughout this State. The ditch into which Gernard Casbon rode his dirt bike is but one of a series of drainage ditches along Judge Perez Highway. *The*

*purpose of these ditches is to keep water from draining onto the travel portion of the Highway and causing a dangerous situation for motorists. Because drainage ditches help make travel along the roads of this state more safe, their utility is great.*

In *Miller v. State, Dep't of Transp. & Dev.*, 95-548, pp. 4-5 (La.App. 3 Cir. 3/20/96), 679 So.2d 134, 137-38, *writ denied*, 96-1674 (La. 10/11/96), 680 So.2d 650, we held:

> [U]nder the facts of this case, we must ask: was the risk that a speeding and intoxicated motorist, driving an A-frame vehicle of this size and design, might lose control of his vehicle, travel across the *opposite* lane of travel, then traverse the shoulder and ditch beyond, and strike *this* tree at the precise angle it did, within the ambit of duty that DOTD owes motorists?
>
> Additionally, when determining whether a condition or defect presented an unreasonable risk of harm, courts balance several factors, including the probability and gravity of the harm presented by the risk against the social utility of the thing involved, the cost to the defendant of avoiding the risk, and the social utility of the plaintiff's conduct at the time of the accident. *Nicks v. Teche Elec. Co-op. Inc.*, 93-1418 (La.App. 3 Cir. 6/1/94), 640 So.2d 723, *writ denied*, 94-1710 (La.10/7/94), 644 So.2d 640.
>
> The tree in question was part of a vast wooded area. The evidence reveals that there is no reason to believe that the risk of harm *this* tree posed to *this* driver was in any way different from that presented by the trees around it. Plaintiffs' own expert, Mr. Moody, testified that "[i]f that tree hadn't been there, and he'd gone off that curve, then there are other trees that he could've hit," some further away, and been *killed* at his calculated speed. This tree had been there for approximately thirty years, and Allen had driven that road many times, and made that curve, all without incident. Thus, plaintiffs postulate that *this* tree, with its odd shape and unique position, posed an unreasonable risk of harm, and without it Allen would be alive today, is pure speculation. Moreover, given the "lay of the land," it is a most unlikely scenario.

17

Furthermore, the record does not substantiate that, indeed, DOTD intended that area to be a "recovery zone," nor that it had any obligation to create and maintain one. In fact, DOTD did not design the highway. We also note that "recovery zones" are intended to aid those drivers, traveling adjacent to them who slightly veer off the road, to return safely onto their own lane of travel. *Id.* Plaintiffs' position implies that had such a zone existed, it would have allowed this driver to regain control of his vehicle and return to the road. However, there is no evidentiary basis for this. It is simply academic, especially in light of plaintiffs' expert's speculation that Allen had *fallen asleep at the wheel.* Even if DOTD had an obligation to maintain such a recovery zone, and did so, likely, it would have served no purpose to this driver who never took evasive action nor attempted to regain control of his vehicle.

*Holmes v. State, through Dept. of Highways*, 466 So.2d 811, 821 (La.App. 3 Cir.), *writ denied*, 472 So.2d 31 (La.1985), speaks directly to this situation: "[t]he Highway Department's duty to maintain a safe shoulder does not encompass the foreseeable risk of injury to a motorist who strays completely off the traveled portion of the highway because his driving ability is *impaired* by reason of intoxication...." (Emphasis added). In another case similar to the present one, the court found that a utility pole located near the highway did not create an unreasonable risk of harm such that the state was liable for resulting injuries, where evidence indicated that the driver lost control of the auto and was intoxicated at the time of the accident. *Beecher v. Keel*, 94-314 (La.App. 4 Cir. 9/29/94), 645 So.2d 666; *writ denied*, 95-0108 (La.3/10/95), 650 So.2d 1185.

As to the area off the shoulder of the road, but within the right-of-way, DOTD owes a duty to maintain that area in such a condition that it does not present an unreasonable risk of harm to motorists or others using the roadway in a *reasonably prudent manner.* *Oster*, 582 So.2d 1285. The logic of the holdings in *Holmes*, *Beecher* and *Oster* would apply with even greater force to the more removed area where Allen had his accident.

In *Cormier*, 748 So.2d 1123, the driver of a vehicle apparently went to sleep, drove off the roadway across the shoulder and into the back embankment of the roadside ditch. The trial court denied recovery, and the court of appeal

reversed. The Supreme Court reversed the court of appeal, and reinstated the trial court's judgment, observing: "Generally, in other cases such as this one, where no road defect caused the driver to leave the road and the driver hit an object in the DOTD's right of way, the DOTD has been relieved of liability." *Id.* at 1129-30.

In this case, the jury's verdict is supported by the evidence in the record, and it is in alignment with the statutory and jurisprudential law on the issues surrounding an unreasonable risk of harm. The jury's verdict is not clearly erroneous.

V.

**CONCLUSION**

Based upon the foregoing, the trial court's interlocutory judgments limiting expert testimony and its final judgment memorializing the jury's verdict in favor of the State of Louisiana, Department of Transportation and Development, are affirmed. Costs of this appeal are assessed to the plaintiff, Gaynelwyn Sonnier.

**AFFIRMED.**