NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-400

DOUGLAS JOHNSON

VERSUS

STATE OF LOUISIANA,
DR. SEYED ALIREZA SADEGHI,
JAMES RUBIN AND VELMA RUBIN
INDIVIDUALLY AND ON BEHALF OF
THE DECEASED, SADAIREA RUBIN,
DR. DERRICK BROOKS, GINA SPEYER,
JADE DOUCET, MICHAEL MILLIGAN

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2014-5036
HONORABLE JULES D. EDWARDS, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and
Candyce G. Perret, Judges.

AFFIRMED.

**Joslyn Alex**
**The Alex Law Firm**
**227 Rees Street**
**Breaux Bridge, LA   70517**
**(337) 332-1180**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Douglas Johnson**

**Dennis J. Phayer**
**Jonathan H. Adams**
**Burglass & Tankersley, LLC**
**5213 Airline Drive**
**Metairie, LA   70001-5602**
**(504) 836-0423**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Dr. Seyed Alireza Sadeghi**
    **Louisiana State University and Agricultural and Mechanical College,**
    **through the Louisiana Health Sciences Center, et al.**

**PERRET, Judge.**

Plaintiff Douglas Johnson ("Mr. Johnson") appeals the trial court's grant of a motion for directed verdict. Mr. Johnson filed a medical malpractice claim against the State of Louisiana through the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College through Louisiana Health Sciences Center, University Medical Center-Lafayette (referred to as "UMC"), Dr. Seyed Alireza Sadeghi, Dr. Derrick Brooks, Gina Speyer, Jade Doucet, and Michael Millikan (collectively, "Defendants")[1] alleging negligence in Defendants' failure to involuntarily commit him on August 23, 2011. We affirm.

**FACTS AND PROCEDURAL BACKGROUND:**

This case follows the tragic killing of Sadairea Rubin by Mr. Johnson on August 23, 2011, after he was discharged from UMC. Mr. Johnson was criminally charged, tried, and found not guilty by reason of insanity. Following a Medical Review Panel claim wherein the panel unanimously found no breach of the standard of care, Mr. Johnson filed a petition in district court against Defendants. Mr. Johnson's petition alleged that Defendants "improperly discharged [Mr. Johnson] from University Medical Center38f [sic] Lafayette on August 23, 2011[,] despite him evidencing signs of psychological instability and risk of harm to himself and others." Mr. Johnson further alleged that as a result of being discharged, "he beat Sadairea Rubin to death within hours of his discharge." Mr. Johnson asserted that Defendants were negligent in their discharge of Mr. Johnson "despite warning signs that he was mentally unstable and posed a risk of harm to himself and others" as well as:

---

[1] Dr. Derrick Brooks, Gina Speyer, Jade Doucet, and Michael Millikan were dismissed on February 10, 2015, prior to the trial on the merits.

1. Failure to properly monitor, examine, evaluate, supervise and tend to Douglas Johnson.

2. Failure to properly monitor and supervise the nursing staff and provide adequate care and treatment for **DOUGLAS JOHNSON**.

3. Failure to admit him and further treat his immediate, fragile mental state.

4. Negligently discharging **DOUGLAS JOHNSON** and failing to hold him for observation despite having actual knowledge of his propensity to hallucinate and cause harm to others, in that he had kicked down a neighbor's door within 24 hours prior to being examined by them, due to allegedly hearing non-existent noises coupled with religious ideation.

Mr. Johnson claims that Defendants' allegedly negligent acts "further deteriorated his mental health audio and visual hallucinations[,]" and "caused a total emotional and behavioral breakdown that resulted in the death of Sadairea Rubin." Additionally, the petition itemizes his damages as "A. Medical expenses; past, present and future; B. General Damages, including pain, suffering and disability; past, present and future; C. Loss of Enjoyment of Life, past, present and future; and D. Loss [sic] Wages and/or Earning Capacity, past, present, and future."

During a trial on the merits and following the close of Mr. Johnson's case-in-chief, Defendants moved for a directed verdict citing Mr. Johnson's failure to prove the standard of care and damages. The trial court granted the directed verdict, finding Mr. Johnson failed to present evidence of damages, and pretermitted a "ruling on the alleged lack of evidence regarding standard of care and breach of same." It is from this judgment that Mr. Johnson appeals.

On appeal, Mr. Johnson asserts that the trial court erred in finding that Mr. Johnson did not establish a cause for an award of damages and that the trial court improperly excluded evidence.

2

**DIRECTED VERDICT:**

Standard of Review:

Directed verdicts are governed by La.Code Civ.P. art. 1810, which states that following the close of the opponent's evidence, a party may move for a directed verdict, which "shall state the specific grounds therefor." The trial court may grant a motion for directed verdict "if, after weighing all evidentiary inferences in the light most favorable to the opponent, the facts and inferences clearly show that a reasonable jury could not reach a contrary verdict." *Whitehead v. Kansas City S. Ry. Co.*, 99-896, pp. 17-18 (La.App. 3 Cir. 12/22/99), 758 So.2d 211, 222, *writ denied*, 00-209 (La. 4/7/00), 759 So.2d 767.

In *Warren v. Shelter Mutual Insurance Co.*, 15-354, p. 5 (La.App. 3 Cir. 6/29/16), 196 So.3d 776, 783, *writ granted*, 16-1647 (La. 1/13/17), 215 So.3d 246, *aff'd as amended*, 16-1647 (La. 10/18/17), 233 So.3d 568, this court explained the standard of review on appeal for directed verdicts:

> On appeal, "*legal* sufficiency of the evidence challenges, such as those presented by . . . motions for directed verdict . . . are subject to the *de novo* standard of review that is used for all legal issues." *Hall v. Folger Coffee Co.,* 03-1734, p. 10 (La.4/14/04), 874 So.2d 90, 99. "[T]he applicable standard of review on a motion for directed verdict is whether the evidence in the record is such that a reasonable person could not reach a verdict to the contrary." *Richard v. Artigue,* 11-1471, p. 4 (La.App. 3 Cir. 4/4/12), 87 So.3d 997, 1001.

Therefore, the question on appeal is "not whether [Mr. Johnson] has proven [his] case against the defendants by a preponderance of the evidence, but rather, upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of [Mr. Johnson] against the defendants." *Hebert v. BellSouth Telecomms., Inc.*, 01-223, p. 5 (La.App. 3 Cir. 6/6/01), 787 So.2d 614, 617, *writ denied*, 01-1943 (La. 10/26/01), 799 So.2d 1145.

<u>Discussion:</u>

Louisiana Revised Statutes 9:2794 provides that in a medical malpractice claim, a plaintiff is required to establish, by a preponderance of the evidence:

> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.

> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

"In order to prevail in a medical malpractice claim, Plaintiffs . . . have the burden of proving '[t]hat as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.'" *Newsom v. Lake Charles Mem'l Hosp.*, 06-1468, p. 17 (La.App. 3 Cir. 4/4/07), 954 So.2d 380, 391, *writ denied*, 07-903 (La. 6/15/07), 958 So.2d 1198 (quoting La.R.S. 9:2794(A)(3)).

In this case, Mr. Johnson has asserted in his petition that Defendants were negligent in improperly monitoring, examining, evaluating, supervising, and tending to him; in improperly supervising the nursing staff; in providing inadequate care and treatment; in failing to admit Mr. Johnson for further treatment; and ultimately in discharging him on the day of the occurrence. Mr. Johnson further asserts that Defendants' alleged negligence caused him past, present, and future medical expenses; past, present, and future general damages,

4

including pain, suffering and disability; past, present, and future loss of enjoyment of life; and past, present, and future lost wages and/or earning capacity.

At trial, Mr. Johnson called several witnesses, including Sergeant Shannon Brasseaux; Corporal Tyler Howerton; Seyed Sadeghi, M.D., the medical director of the emergency room at UMC on August 23, 2011; Gina Speyer, RN at UMC; Jade Doucet, RN at UMC; Michael Milliken, a professional counselor at UMC; and Dr. Benjamin Löwenburg, a forensic psychologist at Eastern Louisiana Mental Health System ("ELMHS"). Additionally, Mr. Johnson submitted his UMC records and proffered several documents. Thereafter, Mr. Johnson rested. Defendants then moved for a directed verdict arguing Mr. Johnson failed to prove the standard of care and his damages.

In ruling on Defendants' motion for directed verdict, the trial court stated in court:

> THE COURT: Okay. Forget about the standard of care. What evidence have you presented regarding damages that this plaintiff has sustained?
>
> MS. ALEX: The only evidence that I have presented thus far is the information that was provided by the doctor who treated him, which indicated how long he has been without - - he has been in the system, which means that there's a loss of enjoyment of life, loss of society, those kinds of things; which are the issues, part of the issues of loss that he is entitled to recover.
>
> THE COURT: That may be in the evidence that you proffered, but I don't know that any witness testified to that, and there's no documents that have been introduced in this case during this trial that speak to allegations of the plaintiff's damages.
>
> Given that, I am required to grant the motion for directed verdict and dismiss the case.

The doctor that Ms. Alex speaks of is Dr. Löwenburg, who treated Mr. Johnson during his time at ELMHS. Dr. Löwenburg testified that from the time

Mr. Johnson was found not guilty by reason of insanity, he has been at ELMHS. Dr. Löwenburg described the process when someone comes to the hospital—first they are under a high level of security with more restrictions and, as they move through treatment, they move through to lower levels of security. He explained that "[t]reatment includes medication management, it includes groups, recreation therapy, work therapy, psychology, any variety of treatments, depending on what's indicated by the treatment team." Dr. Löwenburg testified that Mr. Johnson resided in the forensic hospital from April 2014 to March 2017, and that he continues to reside on the campus of the hospital in a secure forensic facility, also called a forensic group home. Dr. Löwenburg testified that Mr. Johnson is currently a patient appointee to the ethics and human rights committee.

No other evidence of Mr. Johnson's damages was presented.[2] Although Mr. Johnson presented the testimony of other witness, these witnesses did not testify regarding damages. Sergeant Brasseaux and Corporal Howerton explained that they were called to Mr. Johnson's apartment complex after receiving a call that Mr. Johnson kicked in the door to his neighbor's apartment. Both testified regarding their first encounter with Mr. Johnson on August 23, 2011, transporting him to UMC, and what occurred once they arrived at UMC. After Mr. Johnson was turned over to UMC staff, neither Sergeant Brasseaux nor Corporal Howerton had any additional interaction with Mr. Johnson. Mr. Johnson's care providers who interacted with or had knowledge of Mr. Johnson's visit on August 23, 2011—Dr.

_____

[2] Mr. Johnson asserts that he presented the affidavit of Dr. Michael MacQuarrie who opined that Dr. Sadeghi and UMC breached their standard of care, which caused Mr. Johnson to do harm to Ms. Rubin. Though it is in the record following an opposition to Defendants' motion for summary judgment and labeled "Exhibit L," this affidavit was not admitted or proffered at trial. It also was not discussed as part of the motion in limine. Thus, it was not made part of Mr. Johnson's case-in-chief to be considered when Defendants moved for a directed verdict.

Sadeghi, Gina Speyer, Jade Doucet, and Mr. Milliken—only offered testimony pertaining to the care provided at UMC to Mr. Johnson on August 23, 2011, as well as the emergency room process.

Further, Mr. Johnson's UMC medical records were admitted, which document that he was brought to UMC by the police and his chief complaint was "hallucinating" and the severity was "severe." His charts also note that he "speaks about religion often" but was oriented times three and denied suicide attempts. Additionally, no billing records were included. The UMC records do not include any information supporting Mr. Johnson's claim for general damages.

Mr. Johnson simply presented no evidence of medical expenses, disability, lost wages, or earning capacity. Additionally, there was no testimony presented regarding any pain and suffering sustained by Mr. Johnson. Instead, Mr. Johnson's counsel recognizes that the only evidence presented was the length of time Mr. Johnson has been at the ELMHS facility, which she argues is proof of loss of enjoyment of life and society.

Loss of enjoyment of life damages compensate the injured person for the "detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formerly enjoyed." *McGee v. A C and S, Inc.*, 05-1036, p. 3 (La. 7/10/06), 933 So.2d 770, 773. Mr. Johnson must prove that the negligence of Defendants caused a loss of enjoyment of life and society. Based on the scant evidence presented in support of damages, we agree with the trial court that reasonable persons could not have reached a verdict in favor of Mr. Johnson as to damages; thus, a directed verdict was proper.

7

**EXCLUDED EVIDENCE:**

Standard of Review:

Mr. Johnson also alleges that the trial court improperly excluded evidence by granting Defendants' motion in limine. "A trial court has great discretion in evidentiary matters, and its decisions regarding motions in limine are reviewed using the abuse of discretion standard." *Sonnier v. State, Dep't of Transp. and Dev.*, 18-73, 18-74, 18-75, p. 3 (La.App. 3 Cir. 6/6/18), 249 So.3d 51, 54.

Discussion:

Mr. Johnson asserts that the evidence excluded at the motion in limine hearing was pertinent to his claim for damages. In support, Mr. Johnson's counsel argues, "This plaintiff is accused of a heinous crime. He will receive no sympathy from the trier of fact, unless he has a human face; a face that would establish that while he 'committed' this crime he was not responsible for this crime." Counsel does not argue that any of the documents excluded would have proven damages such as medical expenses, lost wages, or general damages.

Evidence is admissible when it is relevant, when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. arts. 401 and 402. Despite being relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403. Additionally, hearsay is generally inadmissible. La.Code Evid. art. 802.

It appears that upon receipt of Mr. Johnson's witness, expert witness, and exhibit list, Defendants filed a motion in limine and successfully argued to exclude

much of the testimony and exhibits included on the list. Although Mr. Johnson provided a memorandum in opposition, he provided no exhibits. Mr. Johnson's counsel also did not appear at the motion in limine hearing, so no exhibits or testimony were proffered, and there is no transcript of that hearing in the record. Further, we note that at trial, Mr. Johnson proffered only some evidence that was previously excluded by the motion in limine ruling, particularly: Lafayette Parish Sheriff records, ELMHS records, Dr. Lyle LeCorgne's re-evaluation report, Dr. Brooks's deposition taken in *Rubin v. State of Louisiana, et al.*,[3] Dr. Sadeghi's deposition taken in *Rubin*, and Ms. Velma Rubin's deposition taken in *Rubin*. As to the remaining evidence excluded by the motion in limine judgment, there is nothing in the record for this court to review other than the arguments made by counsel.

"In order for this Court to review evidence excluded by the trial court either in trial or in a motion in limine, the party must comply with La. C.C.P. art. 1636 to preserve the evidence." *Tatum v. United Parcel Serv., Inc.*, 10-1053, p. 18 (La.App. 5 Cir. 11/15/11), 79 So.3d 1094, 1104, *writ denied*, 11-2783 (La. 2/17/12), 82 So.3d 290. Louisiana Code of Civil Procedure Article 1636(A) states, "When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence." There was no complete record made, either by proffer of the evidence or via a statement by Mr. Johnson regarding the nature of the evidence when the court

---

[3] This suit was brought by the deceased's parents against the State of Louisiana, Dr. Seyed Alireza Sadeghi, and Douglas Johnson in the Louisiana Fifteenth Judicial District Court, docket number 2012-4314.

ruled the evidence inadmissible. Therefore, we will only address the evidence excluded, but proffered, by Mr. Johnson at trial.

As this court has found no error in the trial court's directed verdict due to Mr. Johnson's failure to prove damages, this court has reviewed the excluded evidence to determine whether any evidence relevant to proving damages was improperly excluded.

Mr. Johnson argues that the criminal proceedings surrounding Ms. Rubin's death contained information relating to his initial detention, his transport to UMC, his release from UMC, and statements given by fact witnesses regarding the events of August 23, 2011. Mr. Johnson argues that this evidence supports "what was seen and heard at the time plaintiff presented at the hospital." In actuality, the proffered documents are only the allegedly certified Lafayette Parish Sheriff's Office medical records of Mr. Johnson.[4] A review of these records indicate that they are not relevant to Mr. Johnson's damages.

Similarly, the testimony of Dr. LeCorgne, a clinical psychologist who performed the psychological evaluation of Mr. Johnson during his criminal proceedings and one re-evaluation in 2017, is also irrelevant to Mr. Johnson's damages. Mr. Johnson asserted that Dr. LeCorgne was not to testify regarding standard of care, but instead was Mr. Johnson's witness "to establish [Mr. Johnson's] medical problem" and "the propriety of the treatment." Dr. LeCorgne's re-evaluation was proffered; however, that report does not provide an opinion regarding Mr. Johnson's damages.

---

[4] Although it is unnecessary for this court to determine the admissibility of these documents as to other issues in this case, this court does note that there is no certification attached to Mr. Johnson's medical records from the Lafayette Parish Sheriff's Office. Additionally, the records were not introduced in conjunction with testimony that would prove their reliability. *See generally* La.Code Evid. art. 803.

Depositions that were proffered included those of Dr. Brooks, Dr. Sadeghi, and Ms. Velma Rubin taken in the *Rubin* case.[5] Dr. Brooks was Mr. Johnson's treating physician on August 23, 2011, at UMC, and Dr. Sadeghi was the emergency room director on that date. Both testified regarding the emergency room process and their recollection of Mr. Johnson and the care provided on that day. Neither testified regarding damages. Ms. Velma Rubin was the victim's mother, and her testimony provided little more than a confirmation of the existence of Mr. Johnson's relationship with her daughter but provided no testimony regarding Mr. Johnson's general damages.

Accordingly, because we conclude that the above proffered evidence is irrelevant to Mr. Johnson's damages and, thus, has no impact on our affirmation of the directed verdict, we pretermit a determination of whether the evidence was properly excluded under the hearsay rules or relevant to other issues in this case.

Lastly, the trial court also excluded the certified ELMHS records. Mr. Johnson's certified ELMHS records are admissible according to La.R.S. 13:3714, which states:

> Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as

---

[5] This court notes that the record also includes those depositions of Gina Speyer, Tyler Howerton, Shannon Brasseaux, Jade Doucet, and Michael Millkin that were taken in *Rubin*. Those depositions appear in the record following the proffered deposition of Dr. Brooks. According to the minutes and transcript, those documents were not proffered at trial. At trial, Mr. Johnson's counsel stated, "I'm going to proffer the rest of the depositions because I didn't proffer them yesterday." Thereafter, a discussion took place regarding the deposition of a "Dr. Snow." Following that discussion, Mr. Johnson's counsel stated, "At this point, Your Honor – oh, let me do this. I'm going to proffer Derrick Brooks and Dr. Sadeghi." Counsel continued, "Since we were unable to talk about some things - - anything else, my No. 6 is Velma Rubin. We're through with the evidence in our case and we will rest, Your Honor." Thus, there is no indication that the depositions of Gina Speyer, Tyler Howerton, Shannon Brasseaux, Jade Doucet, and Michael Millkin that were taken in *Rubin* were proffered. Therefore, this court will only consider whether the depositions of Dr. Brooks, Dr. Sadeghi, and Ms. Velma Rubin were properly excluded.

defined by R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A), certified or attested to by the state health care provider or the private health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.

While the certified ELMHS records may fall under an exception to the hearsay rule, their relevance is limited and "La.R.S. 13:3714 does not transform it into admissible evidence" as "'hearsay and irrelevancy[] are independent bases for exclusion of evidence.'" *Vaughn v. Progressive Sec. Ins. Co.*, 03-1105, p. 5-6 (La.App. 3 Cir. 3/2/05), 896 So.2d 1207, 1215 (quoting *Kenny v. Cooper*, 444 So.2d 211, 212 (La.App. 1 Cir. 1983)). Mr. Johnson asserted damages in past, present, and future medical expenses; the ELMHS records do not contain any bills. Additionally, Mr. Johnson asserts that he suffered a loss of enjoyment of life and pain and suffering. The ELMHS records do contain some information regarding Mr. Johnson's life at the facility, such as excursions, activities, work therapy, and his interaction with other residents, as well as notations that Mr. Johnson reported to staff on how he was feeling/doing and that he thinks of his "GF" frequently.

However, had the ELMHS records been admitted, the record as a whole is still deficient regarding evidence of Mr. Johnson's damages. Mr. Johnson did not testify.[6] No other witness testified regarding Mr. Johnson's loss of enjoyment of life or pain and suffering. Mr. Johnson provided no evidence of "detrimental alterations of [his] life or lifestyle or [his] inability to participate in the activities or pleasures of life that were formerly enjoyed." *McGee*, 933 So.2d at 773.

---

[6] Mr. Johnson was deposed in *Rubin*. But his deposition was excluded in the trial court's motion in limine judgment. Mr. Johnson did not proffer his deposition for review on appeal.

Therefore, this court's affirmation of the directed verdict due to lack of proof of damages does not hinge on the admissibility of these ELMHS records.

**DECREE:**

We affirm the trial court's grant of a directed verdict to Defendants, State of Louisiana through the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College through Louisiana Health Sciences Center, University Medical Center-Lafayette and Dr. Seyed Alireza Sadeghi. Costs of this appeal are assessed to Plaintiff-Appellant, Douglas Johnson.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.